IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ECOPRODUCT SOLUTIONS, L.P. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-07-cv_____ |
| | § | |
| TETRA TECHNOLOGIES, INC. | § | |
| Defendant. | § | JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff EcoProduct Solutions, L.P. ("EcoProduct") brings this action against Defendant Tetra Technologies, Inc. ("Tetra") and alleges:

## PARTIES

1. Plaintiff EcoProduct is a Texas limited partnership that has its principal executive offices in Houston, TX.

2. Defendant Tetra is a Delaware corporation that has its principal executive offices in The Woodlands, TX. Tetra may be served by serving its registered agent for service of process, CT Corporation System, 1021 Main Street Ste. 1150, Houston, Texas 77002, either by certified mail / return receipt requested or personal delivery.

## JURISDICTION

4. This action arises under the antitrust laws of the United States, Title 15 United States Code. Jurisdiction is proper under 15 U.S.C. § 15 and 28 U.S.C. § 1331.

5. Tetra does business in this State and District and has sufficient contacts to subject it to the personal jurisdiction of this Court for this antitrust action. Tetra's principal executive offices are located in this State and District, and is selling and offering to sell, and has within a reasonable period prior to the filing of this action, sold and offered to sell its

products to consumers in this State and in this District. Tetra has placed its products into the stream of commerce, knowing or reasonably expecting that such products will be used, sold, or offered to be sold in this State and in this District. Tetra has intentionally established distribution channels to offer its products for sale and to sell its products in this State and in this District.

## VENUE

6. Venue is proper in this Court under 15 U.S.C. § 22 because Tetra is an inhabitant of this District and transacts business in this District. In addition, venue is proper in this Court under 28 U.S.C. §§ 1391(b)-(c) because (i) Tetra resides in this District and (ii) a substantial part of the events or omissions giving rise to the claims against Tetra occurred in this District.

## FACTS

7. This is an action for predatory pricing in violation of 15 U.S.C. § 2 (the "Sherman Act") and 15 U.S.C. § 13(a) (the "Robinson-Patman Act").

8. According to Tetra's own internet website, it is the "world's largest, vertically integrated producer, marketer, and distributor of calcium chloride, which it supplies as feedstocks—along with its brominated products—for its completion fluids business as well as for applications in a variety of other markets." Calcium chloride is used in oil and gas drilling, road maintenance, snow and ice removal, and a variety of industrial applications.

9. For several years and, in any event, all times relevant hereto, Tetra has been the dominant calcium chloride manufacturer/seller in the southern United States.[1] Although there

---

[1] The "southern United States," for purposes of this Complaint, include Texas, Louisiana, Mississippi, Alabama, Florida, Georgia, South Carolina, North Carolina, Tennessee, Arkansas, Oklahoma, Kansas, Missouri, and Nebraska. The dominant calcium choride manufacturer/seller in the "northern United States" (which, for purposes of this Complaint, include Minnesota, Wisconsin, Michigan, Illinois, Iowa, Indiana, Kentucky, Virginia, West

exist other calcium chloride manufacturers from whom Tetra acquires some of its calcium chloride supply, Tetra had no significant competitor in the southern United States in the manufacture/sale market at least until 2005.

10.  In 2006, Plaintiff EcoProduct entered the calcium chloride market and began to compete with Tetra (including in the "end user" sale and distribution market). EcoProduct obtained calcium choride to sell and distribute both from third party suppliers and from its own conversion facility in Louisiana.

11.  In 2006, Tetra learned that EcoProduct had entered into a contract for the right to purchase the calcium chloride supply of third party Honeywell International Inc. Under normal circumstances, this particular supply source would be significant to EcoProduct's ability to compete with Tetra in the southern United States / Gulf Coast region because calcium chloride, while fungible by its nature, is subject to extremely high transportation costs. In other words, for example, a seller or distributor could not reasonably expect that product from a supply source in Michigan could be sold for a profit in Texas.

12.  Upon learning that EcoProduct would pose a legitimate competitive threat to Tetra's previous stranglehold on the calcium chloride market in the southern United States, Tetra began in 2006 to engage in a predatory pricing scheme designed to drive EcoProduct out of the market. Specifically, Tetra entered into exclusive distribution agreements with several significant purchasers in this region – including, by way of example, A.E.P. Environmental, L.L.C. (d/b/a "Ambar") and Baroid Industrial Drilling Products ("Baroid") – at prices well below fair market value and, indeed, below Tetra's own costs. The prices charged to customers such as Ambar and Baroid were at or around $44 per ton of calcium chloride, while the fair market value

---

Virginia, Ohio, Pennsylvania, Maryland, Delaware, New Jersey, New York, Connecticut, Rhode Island, Vermont, Massachusetts, New Hampshire, and Maine) has been, at all relevant times, third party Dow Chemical Co. ("Dow").

prices for end users in this region were actually in the range of $75-90 per ton. Amazingly, Tetra openly stated to third parties that it was pricing its calcium chloride below cost specifically to drive EcoProduct out of the calcium chloride business.

13. When Tetra agreed to sell calcium chloride at the below-market prices discussed in the preceding paragraphs, it believed (correctly) that such prices would be lower than its supply costs. Given the large quantity of product that Tetra obligated itself to supply at the $44 per ton level, it has by necessity obtained a significant portion from sources in the northern United States which, given the transportation costs discussed above, would and has cost Tetra as much as $90 per ton of supply, more than twice as much as Tetra is selling it for. In fact, Tetra has taken the virtually unprecedented step of turning to third party Dow (the aforementioned dominant calcium chloride manufacturer/seller in the northern United States) for a significant amount of its supply to be transported and sold in the <u>southern</u> United States.

14. Tetra continues to lose significant amounts of money under these below-cost pricing agreements – consistent with that fact, its announced 2Q 2007 earnings were 22 percent lower than the same period a year ago. However, Tetra has done so because of its (justified) belief that it has a reasonable chance of recouping such losses after EcoProduct is driven out of the business. In other words, Tetra's predatory pricing scheme could actually drive EcoProduct out of the market, and Tetra could then raise prices long enough to recoup its losses without drawing new entrants to the market – which is especially likely given Tetra's already overwhelming market power in the southern United States.

15. Of course, Tetra is not charging below-market prices to all of its purchasers. Rather, it is discriminating between (i) purchasers who would otherwise be prime candidates to purchase from EcoProduct (i.e., purchasers that are physically set up for delivery by barge); and

(ii) purchasers who would not otherwise be prime candidates to purchase significant amounts of EcoProduct's supply. Since the latter group is not critical to Tetra's objective of driving EcoProduct out of business, it continues to be charged market prices for commodity of the like grade and quality that is being sold for below-cost prices to other purchasers. This scheme has the effect of substantially lessening competition and tends to create and/or perpetuate a monopoly in this line of commerce.

## CAUSES OF ACTION

A. **Monopolization or Attempting to Monopolize Under 15 U.S.C. § 2 (the "Sherman Act")**

16. The facts alleged above are incorporated into this cause of action as if fully set forth herein.

17. Tetra has monopolized or attempted to monopolize part of interstate commerce (namely, the calcium chloride sale and distribution business in the southern United States including a portion of the Midwest).

18. Tetra is charging prices for calcium chloride that are below any reasonable and appropriate measure of its costs.

19. Tetra's predatory pricing poses a dangerous probability of actual monopolization and Tetra's recouping the losses from such below-cost pricing by (a) driving EcoProduct out of the market; and (b) raising prices to consumers long enough to recoup Tetra's costs without drawing new entrants to the market.

20. Tetra's predatory pricing scheme has proximately caused and continues to proximately cause injury to EcoProduct.

B. **Primary-Line Price Discrimination In Contravention of Competition Under 15 U.S.C. § 13(a) (the "Robinson-Patman Act")**

5

21. The facts alleged above are incorporated into this cause of action as if fully set forth herein.

22. Tetra has discriminated in price between different purchasers of calcium chloride (of like grade and quality) sold for use or consumption within the United States. The price being charged to purchasers who would otherwise be prime candidates to purchase from EcoProduct (i.e., purchasers that are physically set up for delivery by barge) is below any reasonable and appropriate measure of Tetra's costs.

23. The effect of such price discrimination is, at a minimum, reasonably likely to substantially lessen competition in the calcium chloride sale and distribution market in the southern United States (including a portion of the Midwest) and tends to create and/or perpetuate a monopoly in that market. Moreover, such price discrimination is not based on the due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered; nor has the price discrimination occurred in good faith to meet an equally low price of any competitor of Tetra's.

24. Tetra's predatory pricing poses, at a minimum, a reasonable possibility of substantial injury to competition and Tetra's recouping the losses from such below-cost pricing by (a) driving EcoProduct out of the market; and (b) raising prices to consumers long enough to recoup Tetra's costs without drawing new entrants to the market.

25. Tetra's predatory price discrimination scheme has proximately caused and continues to proximately cause injury to EcoProduct.

## RELIEF

26.     Plaintiff respectfully requests the following relief:

     a.     that the Court award actual damages to EcoProduct against Tetra in an amount to be proven at trial;

     b.     that the Court award threefold damages, the cost of suit (including a reasonable attorney's fee), and interest pursuant to 15 U.S.C. § 15;

     c.     that the Court award such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

27.     EcoProduct hereby demands a trial by jury as to all issues triable by a jury.

                      Respectfully submitted,

                      By: /s/ Jean C. Frizzell
                         Jean C. Frizzell
                         T.B.A. No. 07484650
                         GIBBS & BRUNS, L.L.P.
                         1100 Louisiana, Suite 5300
                         Houston, Texas   77002
                         Telephone: (713) 650-8805
                         Facsimile: (713) 750-0903
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**
**ECOPRODUCT SOLUTIONS, L.P.**

Of Counsel:

                      By: /s/ Brian T. Ross
                         John Scott Black
                         T.B.A. No. 24012292
                         Brian T. Ross
                         T.B.A. No. 24037395
                         GIBBS & BRUNS, L.L.P.
                         1100 Louisiana, Suite 5300
                         Houston, Texas   77002
                         Telephone: (713) 650-8805
                         Facsimile: (713) 750-0903